IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NUHA FARES,                              §
                                        §
            Plaintiff,                   §          CIVIL ACTION NO.
v.                                       §          3:05-CV-0600-P
                                        §
TDCJ PAROLE DIVISION,                    §
                                        §
            Defendant.                   §

### MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant Texas Department of Criminal Justice's (hereinafter "TDCJ") Motion for Summary Judgment, filed July 29, 2005. Plaintiff Nuha Fares, proceeding pro se, failed to respond, despite notification from the Court on August 24, 2005, that it would proceed without her response if she failed to file by September 5, 2005.[1] For the reasons stated below, the Court hereby GRANTS Defendant's Motion for Summary Judgment.

## I. Background

This case arises out of Defendant's decision to terminate Plaintiff from her employment as a parole officer. Plaintiff claims that she was discriminated against due to her Lebanese origin and in retaliation for filing an internal grievance for disparate treatment. (Compl. ¶¶ 2, 3.) In response, Defendant states that Plaintiff was terminated for failure to comply with its leave policies. (Def.'s Brief at 13.)

---

[1] The Court's order gave Plaintiff ten days to file her response, thereby establishing a deadline of Saturday, September 3, 2005. Because this deadline fell on a Saturday, Plaintiff had until Monday, September 5 to file her response, as per Fed. R. Civ. P. 6(a).

Plaintiff began her employment with Defendant on May 20, 2002, as a Caseworker II at Defendant's Fort Worth I Office.[2] (Def.'s App. at 65.) She was promoted from Caseworker II to Parole Officer I on June 1, 2003. (*Id.* at 64.) In January of 2004, Plaintiff transferred from the Fort Worth District Parole Office to the Dallas District Parole Office. (*Id.* at 63.) She worked there until her separation from TDCJ, which was effective October 14, 2004. (*Id.* at 19, 57.)

Plaintiff suffered injuries in a car accident on June 2, 2004, and sought medical care for these injuries on June 4th. (*Id.* at 49–50.) She was diagnosed with a Cervical Neck Strain, a Thoracic Sprain, and Hysteria. (*Id.* at 50.) After receiving medical care, Plaintiff presented Defendant with a Return to Work/School Release form, which indicated that she would be able to return to work on June 14, 2004. (*Id.* at 49.)

On June 9, 2004, Defendant placed Plaintiff on Family Medical Leave (hereinafter "FML") for "a serious health condition affecting [her] ability to perform the essential functions of [her] job." (*Id.* at 44.) Defendant sent Plaintiff a Family and Medical Leave (FML)/Sick Leave Notification form, notifying her of her eligibility for FML and that any requested leave would count against her twelve month period of FMLA entitlement. (*Id.* at 44.) The form also informed Plaintiff that she must furnish a leave application and a dated health care provider's statement. (*Id.*) The form specifically stated that "[f]ailure to furnish medical certification could result in disciplinary action or administrative separation from employment." (*Id.*)

Defendant received a second physician's note from Plaintiff on June 16, 2004. (*Id.* at 48.)

---

[2] If the non-movant does not respond to a motion for summary judgment, the Court is entitled to accept the facts listed in support of the motion as undisputed. *Eversly v. MBank Dallas*, 843 F.2d 172, 173–74 (5th Cir. 1988).

This note stated that Plaintiff was to remain off work until at least July 15, 2004. (*Id.*) It also informed Defendant that her physician recommended an X-Ray and a MRI. (*Id.*)

Defendant sent Plaintiff a second Family and Medical Leave (FML)/Sick Leave Notification form on July 16, 2004. (*Id.* at 32.) This form indicated that Plaintiff's leave began on June 9, 2004, and was expected to continue until September 1, 2004. (*Id.*) It contained the same legal disclosures as the first form, including the warning that "[f]ailure to furnish medical certification could result in disciplinary action or administrative separation from employment." (*Id.* at 32–33.) At that time, Defendant's Human Resources Assistant, Ms. Gloria Marlow, sent Plaintiff a letter stating that her physician's statement had expired and that an updated physician's statement was needed by July 30, 2004. (*Id.* at 31.) The letter warned that "[f]ailure to provide an updated physician's statement by 7-30-04 may result in disciplinary action." (*Id.*)

On August 24, 2004, Defendant sent Plaintiff a Request for a Leave Application, which stated that Plaintiff was "required to submit a Leave Application (PERS-24) with a current health care provider's statement" within fifteen days of the date the Request was mailed. (*Id.* at 9.) It also informed Plaintiff that if she failed to comply she would "not be allowed to remain in approved leave without pay" and that she "may be separated from employment." (*Id.*)

Ms. Gloria Marlow emailed a Human Resources Specialist III, Ms. Melissa Theis, on September 8, 2004, and requested permission to terminate Plaintiff. (*Id.* at 15.) The email stated:

> Today, 9-8-04, is 15 calendar days from 8-24-04, the date the [Request for Leave Application] was sent to Ms. Fares by certified mail. As of today, we have not heard nor received anything from her.

(*Id.* at 15.)  Ms. Theis replied on September 10, 2004:

> If the employee is not FML eligible you may follow the procedures in [the Executive
>
> Directive on Administrative Separation].

(*Id.* at 15, 124.)   The next day the Warden/Department Head signed a Recommendation for Administrative Separation, and notification of this decision was sent to Plaintiff.  (*Id.* at 16, 17.) Over the next month, the Human Resources Section Director, the Director of Human Resources, the Office of the General Counsel, and the Division Director all signed off on the Warden's Recommendation.  (*Id.* at 18.)  The administrative separation became final on October 14, 2004. (*Id.* at 19.)

Plaintiff then filed a charge of race, national origin, retaliation, and disability discrimination with the EEOC.  (*Id.* at 113.)  The EEOC conducted an investigation and was unable to conclude that the applicable statutes had been violated.  (*Id.* at 111.)  The EEOC mailed a notice of right to sue on March 17, 2005.  (*Id.*)  Plaintiff filed her complaint in this Court on March 28, 2005, alleging discrimination based on her Lebanese origin and in retaliation for filing an internal grievance. (Compl. at 1.)[3]

## II.  Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine

---

[3] While Defendant does not raise the issue, Plaintiff's Complaint could also be interpreted as stating a hostile work environment claim.  (Compl. ¶ 3.)  However, this Court has no jurisdiction to hear such a claim because Plaintiff failed to raise it in her EEO complaint.  (Def.'s App. at 111–23.)  "Compliance with the administrative review apparatus provided by Title VII is a requisite for judicial review of a discrimination claim."  *Ray v. Freeman*, 626 F.2d 439, 442 (5th Cir. 1980).

issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[A] party seeking summary judgment

always bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine

issue of material fact."  *Celotex*, 477 U.S. at 323.  However, there is no requirement "that the moving

party support its motion with affidavits or other similar materials negating the opponent's claim."

*Id.*  At this stage, all evidence and the reasonable inferences to be drawn therefrom must be viewed

in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S.

654, 655 (1962).

     Once the moving party has made an initial showing, the party opposing the motion must

come forward with competent summary judgment evidence of the existence of a genuine fact issue.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  At this point, the

nonmovant must provide specific facts that show the case presents a genuine issue of material fact,

such that a reasonable jury might return a verdict in her favor.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  Mere assertions of a factual dispute unsupported by probative evidence will

not prevent summary judgment.  *Id.* at 248–50; *Abbott v. Equity Group*, 2 F.3d 613, 619 (5th Cir.

1993).  In other words, conclusory statements, speculation, and unsubstantiated assertions will not

suffice to defeat a motion for summary judgment.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d

1415, 1429 (5th Cir. 1996) (en banc).  If the nonmoving party fails to make a showing sufficient to

establish the existence of an element essential to her case and on which she bears the burden of proof

at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

Where the non-movant fails to respond to a motion for summary judgment, the Court is entitled to accept the facts listed in support of the motion as undisputed. *Eversly v. MBank Dallas*, 843 F.2d 172, 173–74 (5th Cir. 1988). Furthermore, the Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). However, "[a] motion for summary judgment cannot be granted simply because there is no opposition . . . ." *United States v. Wilson*, 113 Fed. App'x. 17, 18 (5th Cir. 2004). The movant "still must establish the absence of a genuine issue of material fact before it can prevail on a summary judgment motion." *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995).

## III.  Title VII Employment Discrimination

As noted above, Plaintiff alleges that she was place on administrative separation due to her Lebanese origin. (Attach. Compl. at 3–4.) Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1) (2003). "*McDonnell Douglas* and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases.'"[4] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The plaintiff must

---

[4] The Court agrees with Defendant that it is appropriate to analyze Plaintiff's discrimination claim using the traditional *McDonnell Douglas* pretext analysis as opposed to the modified *McDonnell Douglas* approach that may be used where mixed motive analysis may apply. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005). Mixed motive analysis applies where a plaintiff seeks to show that the protected characteristic was a "motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). Here, Plaintiff does not argue that Defendant's legitimate, nondiscriminatory reason was one factor in

first establish, by a preponderance of the evidence, a prima facie case of discrimination.  *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).  A prima facie case of discrimination is established once the plaintiff proves that:  (1) she is a member of a protected class; (2) that she was qualified for her position; (3) that she suffered an adverse employment action; and (4) that others similarly situated were treated more favorably.  *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 510 (5th Cir. 2001); *Shackelford*, 190 F.3d at 404; *Ward v. Bechtel Corp.*, 102 F.3d 199, 201 (5th Cir. 1997).

The prima facie case, once established, raises a presumption of discrimination which the defendant must rebut by articulating a legitimate, nondiscriminatory reason for its actions. *Shackelford*, 190 F.3d at 404.  This burden on the employer is only one of production, not persuasion, and involves no credibility assessments.  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).  "If the defendant satisfies this burden, the plaintiff must prove that the proffered reasons are pretextual."  *Shackelford*, 190 F.3d at 404.  "Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination."  *Id.*

In the instant case, even if Plaintiff can establish a prima facie case of employment discrimination, Defendant is still entitled to summary judgment because it has produced evidence suggesting that it had a legitimate, nondiscriminatory reason for the employment action, and Plaintiff

---

the decision, but that it was also motivated by her national origin.  Rather she seeks to create an inference of discrimination by showing that Defendant had "no justifiable business necessity" and that its asserted reason is false. (Compl. ¶ 3.)  Such a claim appropriately falls under the traditional *McDonnell Douglas* pretext mode of analysis.

has failed to respond with competent summary judgment evidence showing a genuine issue of material fact. Defendant presents evidence suggesting that it administratively separated Plaintiff from her employment because she "exhausted all her accrued leave . . . [and] FML" and "failed to comply with policy to continue in an approved leave without pay status." (Def.'s Brief at 13.) The correspondence between the parties during the summer prior to Plaintiff's termination indicates that Plaintiff exhausted her accrued leave on June 14, 2004, and her entitlement to twelve (12) weeks of FML on September 1, 2004. (Def.'s App. at 32, 41.) It also suggests that Plaintiff failed to submit a Leave Application with a current health care provider's statement as required to remain in an approved leave without pay status. (*Id.* at 9–10.) In addition, many of the forms sent to Plaintiff contain a warning that she could be administratively separated if she failed to comply with Defendant's policies. By producing such evidence, Defendant has met its burden of coming forward with evidence showing that it had a legitimate, nondiscriminatory business reason for its decision.

Because Defendant has satisfied its burden of production, the burden shifts back to Plaintiff to produce sufficient evidence suggesting that there is a genuine issue of material fact as to discrimination. As mentioned above, Plaintiff did not respond to Defendant's Motion with new evidence suggesting pretext. However, earlier in the case Plaintiff submitted her own affidavit and correspondence from the proceedings before the EEOC. In her affidavit, Plaintiff testifies that she "followed agency policies and the law." (Fares Aff. at 1.) She also claims that Ms. Marlow spoke to her in a demeaning tone during multiple phone conversations shortly after Plaintiff received the dismissal letter. (*Id.*) However, this limited evidence is not "the type of 'significant probative evidence' required to defeat summary judgment." *United States v. Lawrence*, 276 F.3d 193, 197

(5th Cir. 2001); *see also Dutton v. Univ. Healthcare Sys., L.L.C.*, 136 Fed. Appx. 596, 603 (5th Cir. 2005) ("[U]nsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment.").

In short, Plaintiff has failed to carry her burden of establishing that there is a genuine issue of material fact as to discrimination. Therefore, Defendant is entitled to summary judgment in regards to Plaintiff's Title VII claim of discrimination based on national origin.

## IV. Retaliation

Plaintiff also contends that "[o]n September 8, 2004, in an act of hate and retaliation, Gloria Marlow, Human Resources Specialist, initiated unjustful termination of (P) employment." (Compl. at 1.) Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3(a) (2000). "To establish a prima facie case of retaliation, [the plaintiff] must show three elements: '(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action.'" *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) (quoting *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996)). The Fifth Circuit has stated that "the 'causal link' required in prong three of the prima facie case for retaliation is not as stringent as the 'but for' standard." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). Indeed, "[c]lose timing between an employee's protected activity and an adverse action against him

may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. GSA*, 110 F.3d 1180, 1188 (5th Cir. 1997). "However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *Id.* at 1188.

In this case, Defendant argues that Plaintiff fails to make a prima facie case of retaliation under Title VII because she "has not articulated what, if any, protected activity she has engaged in, nor has she established a causal connection between any protected activity and her administrative separation from TDCJ." (Def.'s Brief at 14.) However, Plaintiff did offer into evidence a letter she sent to the EEOC investigator suggesting that she was terminated because she filed an internal grievance of disparate treatment based on national origin. (Attach. Compl. at 2.) Regardless, even if Plaintiff could make out a prima facie case of retaliation under Title VII based on this evidence, Defendant remains entitled to summary judgment because as discussed above it has offered evidence of a legitimate, nondiscriminatory motive and Plaintiff has failed to respond with evidence from which the jury could infer that the true reason was retaliatory.

## Conclusion

For the reasons stated above, the Court hereby GRANTS Defendant's Motion for Summary Judgment. Plaintiff's claims are thus DISMISSED WITH PREJUDICE.

**It is so ordered**.

Signed this 21st day of November 2005.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE